In the Matter of the ESTATE of Rosa B. Wright RETTENMEYER, Deceased.

Nos. 37673, 37728.

Supreme Court of Oklahoma.

Oct. 27, 1959.

As Amended Nov. 13, 1959.

Young, Young & Young and Glenn O. Young, Sapulpa, for Mary Jane Hopkins, nee Wright, and others.

Looney, Watts, Looney & Nichols, Oklahoma City, Sam T. Allen, III, Sapulpa, Moraul Bosonetto, Sapulpa, for Francis X. Rettenmeyer, executor, and others.

Embry, Crowe, Tolbert, Boxley & Johnson, Oklahoma City, pro sese and for The First National Bank and Trust Company of Oklahoma City, executor.

John M. Freese, Tulsa, for Clarence Denham, and others.

DAVISON, Chief Justice.

This is an appeal on the original record from a judgment of the District Court, on appeal from the County Court, on the rendition of the final decree in the Estate of Rosa B. Wright Rettenmeyer, deceased, hereinafter referred to as Rosa.

The trial court held that the estate of deceased should be distributed in accordance with the will of deceased; that the ante-nuptial contract of deceased and her husband was in force and effect; that there had been no violation of a "no contest" clause in a codicil to the will; that there was no need to appoint a special executor to pursue proceeds of government bonds or an accounting of funds and properties of deceased; denying apportioning of Federal Estate Taxes, and allowed executor's and attorney's fees.

Appeal is made by Mary Jane Denham Hopkins, nee Wright, Donald George Fleming, Leona Holcomb, nee Denham, Frank, George and Clarence Denham; and May Denham, Dorothy Denham and Carolyn Denham, now Lumley, heirs of Ed Denham, deceased; hereinafter referred to as Denham Devisees. These appellants contend: (1) That the acts of Joseph A. Rettenmeyer (husband of Rosa), while alive, and by his executor and heirs violated the "no contest" clause of the will of Rosa. (2) The lower court should have appointed a special executor to recover $191,864.62, proceeds of sale of United States Bonds, used almost in its entirety to purchase two annuity policies, and for damages for conversion of said bonds. (3) That the lower court should have required an accounting by the executor of the estate of Joseph A. Rettenmeyer and his devisees and successors of funds and property allegedly wrongfully taken from Rosa, while she was allegedly impaired in mind and body and incompetent.

Appeal is also made by Francis X. Rettenmeyer, executor of the Estate of Joseph A. Rettenmeyer, deceased, hereinafter referred to as JAR, and was docketed by the clerk of this court as No. 37728 and same is consolidated with No. 37673 for opinion by this court. This appellant contends the lower court erred: (1) In remanding to the County Court an application to surcharge the Denham Devisees for rental value of the homestead. (2) In finding the ante-nuptial contract of Rosa and JAR was in force and effect and that an intermediate order of the County Court finding such contract was destroyed and revoked and a subsequent dismissal by the District Court of an appeal from such order did not constitute a final adjudication of such fact. (3) In distributing one-eleventh under the will rather than one-half under the laws of succession to the estate of JAR. (4) In failing to apportion federal estate taxes so the "marital deduction" would not be burdened with any part thereof.

First National Bank and Trust Company, executor, and Embry, Crowe, Tolbert, Boxley and Johnson, attorneys for executor, filed cross-appeals and complain they were not adequately compensated for their services.

From the record it appears that in 1925 Rosa and Cal Wright (her then husband), being childless, took into their home six nieces and nephews of Rosa, being Frank, Edward, George, Clarence, Leona and Mary Jane Denham (age five and youngest); in 1928 Cal died; in 1932 Rosa legally adopted Mary Jane; that Rosa was a capable and energetic person and actively continued the oil and gas business of her late husband until the middle 1940s, when she sold it retaining numerous mineral interests. JAR had married the sister of Cal Wright and they had three children, Francis X., Raymond and Forrest, and his wife had died. In 1937 Rosa and JAR were married after entering into an ante-nuptial contract wherein each released any interest in the property of the other.

In 1941 and 1946 Rosa bought annuities whereby each paid to each of the original six Denhams $50 per month for life except Clarence did not share in the last annuity but was given a farm instead.

On July 24, 1946, Rosa, age 76, executed her will as drawn by her attorney wherein she directed payment of all her just debts and after a relatively small bequest left her estate in equal parts to Mary Jane Wright Hopkins; Frank, Edward, George and Clarence Denham; Leona Denham Holcomb; Raymond, Francis X. and Forrest Rettenmeyer; JAR and Donald George

Fleming (son of Leona); appointing First National Bank and Trust Company executor and designating the Embry law firm as attorneys.

On February 2, 1949, Rosa suffered a stroke which paralyzed her right side and impaired her speech and which, after her initial recovery, confined her to a wheel chair. On advice of her attorney Rosa executed a power of attorney to JAR to lease certain lands for oil and gas and draw on certain bank accounts. In 1950, after conferences with her attorneys, a tax adviser and the insurance representative who handled the two previous annuities, Rosa had United States bonds converted into cash and bought the following described annuities: in October, 1950, upon payment of a single premium of $25,143.03, a policy for $33,000 was purchased for Donald George Fleming, age 11 (son of Leona Holcomb), with life ownership in Rosa and JAR, or survivor, with payments beginning at the expiration of 15 years and payable monthly over a period of 20 years. (Rosa and JAR are both dead and this policy is in force); in December, 1950, upon payment of a single premium of $162,606, a policy was purchased payable $1,000 per month to Rosa and after her death $1,000 per month to JAR, if he survived, and the balance, 123.07 per month to each of four nieces and nephews of Rosa, (other than the six original Denhams) and Frank X. (Francis X.), Raymond and Marion Rettenmeyer (widow of Forrest) and $23.08 per month to each of the original six Denhams. (On the date of this policy Rosa was age 80 years and six months and received $24,000 and JAR was 83 years and two months and received $15,000 from the policy before his death.

On November 22, 1950, Rosa made her first codicil to her will which, so far as pertinent here, substituted Marion Rettenmeyer for her deceased husband, Forrest Rettenmeyer, and on January 30, 1951, Rosa made her second codicil setting forth a "no contest" provision and depriving any contestant of any interest in the estate.

In the "Summer" of 1951 Rosa suffered a second stroke and was confined to her bed and on July 31, 1952, JAR was appointed guardian of her person and another party appointed guardian of her estate. In December, 1952, Rosa died (age 82 years) and the guardianship terminated.

On January 12, 1953, Rosa's will was admitted to probate and inventory and appraisement revealed an estate in excess of $289,000.

On the question of whether the trial court erred in refusing to appoint a special administrator to recover the proceeds of the sale of the United States bonds and for an accounting, the record and the above resumé of the facts reflects a remarkable series of acts and events sufficient to support the findings and judgment of the trial court on this question. We have reviewed the record and find that the holding of the court was correct and we so hold. Copenhaver v. Copenhaver, Okl., 317 P.2d 756.

The Denham Devisees urge that the acts of JAR and the executor of his estate and his heirs and devisees constitute a breach of the "no contest" clause and that no part of the estate of Rosa should be distributed to the estate of JAR or the Rettenmeyer devisees named in the will. The "no contest" clause of the codicil provision reads as follows:

" * * * direct that if any devisee, legatee or beneficiary under my said will, as so qualified and republished, together with such codicil and this second codicil, shall contest the validity or object to the probate of said will or codicil, or attempt to vacate the same or to alter or change any of the provisions thereof, such person shall be and is hereby deprived of all beneficial interest thereunder and of any share in my estate, and the share of such person shall become a part of my residuary estate and be distributed as provided by law; * * * "

This contention is based in part upon the acts of JAR and his children during

the lifetime of Rosa and were also urged as grounds for the appointment of a special administrator and for an accounting. As above set out we approved the action of the trial court as to that contention. We likewise affirm the findings and judgment of the trial court that such acts during the lifetime of Rosa did not constitute a violation of the "no contest" clause in the codicil.

■ This contention is also based on acts of JAR after the death of Rosa. On October 3, 1953, JAR filed his election to take under the laws of succession and not under the will. The theory of JAR was that the will devised to him less than the mandatory share prescribed by statute to the surviving husband (Title 84 O.S.1951 § 44) and that he could elect to take under the laws of succession. The county court and district court held that the ante-nuptial agreement made at the time of the marriage of JAR and Rosa was in force and effect. In a subsequent portion of this decision we affirm this holding. The existence of the ante-nuptial contract precluded any right of JAR to elect to take under the statute. In re Blaydes' Estate, 202 Okl. 558, 216 P.2d 277.

JAR sought to make an election between two supposed rights but in truth he had only one right and that was to take under the will. The right of election requires two or more inconsistent rights or remedies between or from which to choose. His misconceived right to elect to take under the law when such right never existed would not preclude him from taking under the will. See Dudley v. King, Okl., 285 P.2d 425 and Harber v. Harber, 158 Ga. 274, 123 S.E. 114, 33 A.L.R. 598.

■ We also call attention to the pertinent portion of 84 O.S.1951 § 44, which provides:

"* * * but no spouse shall bequeath or devise away from the other so much of the estate of the testator that the other spouse would receive less in value than would be obtained through succession by law * * *"

All wills are subject to this limitation and in the absence of an ante-nuptial agreement the surviving spouse has the right to elect to take under the law or under the will. In re Blaydes' Estate, supra. The election presented to the court the proposition that the devise to JAR was an infringement of this statutory limitation. The existence of the ante-nuptial agreement was a matter of defense to such election and Denham Devisees availed themselves of this defense. To hold the election was a violation of the "no contest" clause in the codicil would render nugatory the quoted statutory provision and deter parties from seeking their lawful rights. Since JAR had no right to elect there was no forfeiture of his right to take under the will. Doing v. Riley, 5 Cir., 176 F.2d 449. The judgment of the lower court on this proposition is affirmed.

■ The appellant, Francis X. Rettenmeyer, executor, urges the evidence shows the mutual destruction and revocation of the ante-nuptial agreement by Rosa and JAR and that the lower court erred in holding to the contrary. This contention is based on testimony of JAR given on October 23, 1953, in a hearing in county court, that about five or six years before, "and it might have been longer", he and Rosa had mutually destroyed and revoked the ante-nuptial agreement made at the time of their marriage. The testimony was substantiated to some degree. There was no evidence that any other person was present when the act of destruction and revocation took place. This testimony would place the time of the alleged destruction and revocation as about October, 1947 or 1948, and maybe earlier. This could have included the date Rosa made her will in 1946 and definitely includes the time during which she bought the last two annuities in October and December, 1950, and the two codicils in November, 1950, and January, 1951, in which she reaffirmed her will. The will and codicils were drawn by attorneys with recognized ability. To hold Rosa agreed to a revocation which could completely disrupt the solemn provisions of her will and codi-

cils would be utterly at variance with her recognized planning and business ability.

■ This court will not disturb the judgment of the district court on this question unless it is clearly against the weight of the evidence. Copenhaver v. Copenhaver, supra. This court has examined the record and it is the opinion of this court that the judgment is not clearly against the weight of the evidence and in fact that the evidence supports the judgment and we affirm the trial court on this proposition.

■ The appellant, Rettenmeyer, executor, further contends that the question of the destruction and revocation of the ante-nuptial agreement was res judicata. The basis of this contention rests on the October, 1953, county court proceedings wherein JAR testified as to destruction and revocation of the ante-nuptial agreement. The county court (Judge S. M. Cunningham, presiding) on October 24, 1953, found the ante-nuptial agreement had been mutually destroyed and revoked. The Denham Devisees appealed to the district court. On March 22, 1954, JAR died. On January 5, 1956, the district court (Judge Jess I. Miracle) dismissed the appeal. On the hearing on final account and petition for distribution on January 30, 1956, the county court (Judge Thomas S. Harris, presiding) and on appeal therefrom the district court (Judge Jess I. Miracle) on November 7, 1956, held the ante-nuptial contract in force and effect. It is contended that the county court order of October 24, 1953, and the appeal and subsequent dismissal constitutes res judicata of the question of revocation and that Denham Devisees are estopped to relitigate the issue. At the time of this hearing the issues before the county court concerned the recovery of the funds used to buy the annuities, the alleged misappropriation of funds and property by JAR, the allowance of homestead, and failure to inventory funds and property and the ante-nuptial contract. The order of the county court disposed of these issues. To this extent the order was proper and included appealable items under 58 O.S.1951 § 721, such as setting apart the homestead and exempt property for the use of JAR.

■ The determination of the question of revocation and destruction of the ante-nuptial contract and thereby the validity of the election of JAR, or the will, or as to distribution would be a determination of a fact decisive of heirship and distribution and is premature. In re Tayrien's Estate, 207 Okl. 401, 250 P.2d 16. Such matters are properly heard and determined at the hearing on the final account and petition for distribution, after proper order and notice. Blasingame v. Gathright, Okl., 284 P.2d 431; Steger v. Gibson, Okl., 287 P.2d 687; Boyes' Estate v. Boyes, 184 Okl. 438, 87 P.2d 1102; 58 O.S.1951 §§ 631, 632.

It is evident that the judge of the district court was of the same view at the time of dismissing the appeal on January 5, 1956. This order of dismissal recites the prior death of JAR and finds moot the question of homestead and exempt property, that the parties have stipulated as to delivery of property not assets of the estate, and that Denham Devisees have filed suit to recover the money spent for the annuities, and remits the papers and pleadings to the county court for further proceedings. Not one word is said about the ante-nuptial contract. If, as contended, the judge of the district court thereby affirmed the finding of mutual revocation of the ante-nuptial contract then such affirmation was most inconsistent with the later finding of the same judge in November, 1956, on appeal from the final decree, that the ante-nuptial contract was in force and effect. This fact of itself is most persuasive as to correctness of our holding on this aspect of the appeal.

The case of Talley v. Harris, 199 Okl. 47, 182 P.2d 765, and other cases cited in support of res judicata and estoppel are not in point under the facts before us. In fact in the cited case the widow denied her ante-nuptial contract, renounced the will and elected to take as an heir and asked for widow's allowance. The county court held

against her and she appealed to the district court. The district court held with the county court. On the hearing on petition for distribution the widow again presented both propositions. The lower court held the widow was estopped by the former adjudication as to the widow's allowance *but* again heard and found her bound by the ante-nuptial agreement. The decision affirmed the lower court even though the disallowance of widow's allowance was wrong in the first instance.

We are of the opinion that res judicata and estoppel does not apply under the facts in this appeal and the judgment of the lower court is affirmed.

■ The appellant, Francis X. Rettenmeyer, executor, further contends the Denham Devisees should be surcharged the rental value of the homestead for the period they have kept the First National Bank & Trust Company, executor herein, from possession thereof. The record reflects JAR continued to occupy the homestead until his death March 22, 1954, and that soon after his death the Denham Devisees took possession and retained possession despite an order of the county court to vacate the property. On the death of JAR the property lost its homestead character. The county court refused to make any surcharge and the district court took no action thereon.

In the case of In re Gentry's Estate, 158 Okl. 196, 13 P.2d 156, 159, we quoted from Sec. 1218, C.O.S.1921 (58 O.S.1951 § 290), and in connection therewith stated:

"Under the provisions of such a statute it is generally held that the administrator has the right to the possession of the real as well as the personal estate and may receive all rents and profits of the real estate until the estate is settled up and delivered over to the heirs by order of the probate court, but that this does not change the title which vested in the heirs, subject to the right of possession by the administrator. * * *"

See also Nolan v. Mathis, 147 Okl. 155, 295 P. 801.

Inasmuch as the Denham Devisees have taken possession of this real estate and thereby deprived the executor of possession and rental that would accrue, the trial court after hearing thereon should have surcharged the Denham Devisees the reasonable rental thereof. Upon this case being remanded in this respect the district court should take appropriate action and give the judgment that the county court should have rendered. In re Shailer's Estate, Okl., 266 P.2d 613.

■ The appellant, Francis X. Rettenmeyer, executor, also urges that the federal estate tax should be apportioned so that the "marital deduction" would not be burdened with any part thereof. This proposition is a matter of first impression in Oklahoma. The will of Rosa, after some relatively minor bequests, devised the residue of her estate in equal shares to the named residuary devisees as hereinbefore set out. The will does not contain any direction or provision as to payment of estate tax and Oklahoma has no statutory provisions relative to apportionment. The residuary estate is sufficient to pay the estate tax.

Appellant has reference to the provisions of the 1948 amendment to the U. S. Code, 26 U.S.C.A. § 812(e), (I.R.C.1939, as amended), providing for the allowance of a "marital deduction" to be (Sec. 812) deducted from "the value of the gross estate", in determining the value of the net estate for tax purposes. Appellant contends that the "marital deduction" is not a part of the taxable estate and therefore that portion should be relieved from the estate tax the same as a charitable bequest. Some states have statutes providing for apportioning of estate taxes and in several states the courts have approved "equitable apportionment" in the absence of statute. The variety of statutes and situations, coupled with the various succession laws, has given rise to numerous decisions defining and determining rights of litigants. An extensive annotation appears in 37 A.L.R.2d 169 et seq.

The leading case defining liability and ultimate burden of the federal estate tax is Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106, 142 A.L.R. 1131.

In Seattle-First Nat. Bank v. Macomber, 32 Wash.2d 696, 203 P.2d 1078, 1081, citing the Del Drago case, the court said:

"The Federal government is not concerned with the ultimate burden of the estate tax. It places primary liability for payment upon the personal representative, as to the tax upon all property required to be included in the gross estate. The ultimate burden of the estate tax is to be determined according to state law."

Respectable authority supports the rule that the burden of estate taxes ultimately falls upon the residuary estate unless the will or a statute provides otherwise. See Annotation, 37 A.L.R.2d at page 176, § 3; Seattle-First Nat. Bank v. Macomber, supra; Central Trust Co. v. Burrow, 144 Kan. 79, 58 P.2d 469; In re O'Shea's Estate, 176 Or. 500, 159 P.2d 198; Northern Trust Co. v. Wilson, 344 Ill.App. 508, 101 N.E.2d 604.

In Thompson v. Wiseman, 10 Cir., 1956, 233 F.2d 734, an Oklahoma estate was involved with a will having no provision relative to payment of estate taxes. The trial court found that certain bequests together with a devise of 1/3rd of the residue of the estate to the widow qualified for the marital deduction. The Circuit Court held that in figuring the value of the devise of 1/3rd of the residue, there should be deducted therefrom the debts and state and federal estate taxes. The court after citing Riggs v. Del Drago, supra, stated:

"Since the will did not designate the specific source from which taxes, debts and expenses of administration were to be paid, we must look to the Oklahoma statute for the answer. Since all of the property of the estate was disposed of by the will, the third classification of the statute, namely, 'Property which is devised or bequeathed to a residuary legatee' controls. It thus seems clear that the residuary estate bears the burden of all debts, including taxes and costs of administration. * * *" [233 F.2d 737.]

The quoted portion of this excerpt is found in the statute "Order of resort to property for payment of debts, administration expenses and allowances." 84 O.S. 1951 § 3, subd. 3. The court further said:

"The gift under the codicil to the wife was out of the residue. There is nothing in the Oklahoma law or in the decisions of its courts to which our attention has been called which would treat gifts of the residue to the wife any differently from gifts to others. In this situation the decisions in Harrison v. Northern Trust Co., 317 U.S. 476, 63 S.Ct. 361, 87 L.Ed. 407, and Rogan v. Taylor, 9 Cir., 136 F.2d 598, seem conclusive. In both cases were involved gifts to charity out of the residuary grant. There, as here, it was argued that since charitable bequests added nothing to the federal estate tax the amount of such bequests should be calculated without first deducting taxes. This argument was rejected because the courts found no basis in the will or in the state law for calculating the bequests differently from other similar bequests to individuals."

See also In re Uihlein's Will, 264 Wis. 362, 59 N.W.2d 641, 38 A.L.R.2d 961.

The trial court's judgment on this issue is hereby affirmed.

■ The First National Bank and Trust Company, executor, and Embry, Crowe, Tolbert, Boxley and Johnson, its attorneys, urge that the respective fees allowed them were not adequate compensation for their services to the estate. The executor was allowed $7,439.32, pursuant to the schedule in 58 O.S.1951 § 527, and the further sum of $560.68 for extraordinary services. It is the opinion of this court that the allowance of those amounts to the executor should be affirmed without change.

The attorneys for the executor have been allowed and paid a fee of $10,000. After examination of the record and briefs this court is of the opinion that this amount does not adequately compensate the attorneys for their services. It should be expected or anticipated that in an estate of this size with numerous properties considerable time and service would normally be furnished by the attorneys to the executor in the administration of the estate. The instant probate, in view of the contents of the record, cannot be described as normal, as that term would be ordinarily applied to the usual probate proceeding. The record abounds with contentious matters from the inception of the probate which resulted in numerous hearings, appeals and litigation, and extensive briefing and oral arguments before this Court, thereby requiring a great deal of time and service by the attorneys in their representation of the executor. The attorneys should be paid the additional sum of ($3,500) for their services and the judgment of the lower court is modified in this respect.

The record reflects that there is or was pending in the District Court of Tulsa County, Oklahoma, cause No. 87402 and in the U. S. District Court for the Northern District of Oklahoma, causes Nos. 3502 and 3503. This court expresses no opinion as to these actions because the same are not before us for decision. We have made our decision herein on the matters presented by these appeals and upon presentation thereof the above courts will give the same such weight and effect as the law supports and determines.

It has been urged that the appeals herein should be dismissed for the reason no supersedeas bond was filed. This court has held no supersedeas bond is necessary in order to appeal from the district courts of this state to the Supreme Court. Nicholson v. State, 132 Okl. 298, 270 P. 567; Cameron v. White, 128 Okl. 251, 262 P. 664.

Judgment is affirmed in part and reversed in part and the matter is remanded to the district court for further proceedings in accordance with this decision.

WILLIAMS, V. C. J., and WELCH, HALLEY, JOHNSON, BLACKBIRD, JACKSON and IRWIN, JJ., concur.

BERRY, J., concurs in part and dissents in part.