In the Matter of the ESTATE OF Sam ZARROW, Deceased.

George RENBERG, Donald Renberg, and Sherri Renberg Kaplan, Co-Executors of the Estate of Dorothy Zarrow Renberg, Appellants,

v.

Jack ZARROW, Appellee.

No. 57999.

Supreme Court of Oklahoma.

May 15, 1984.

As Corrected Sept. 28, 1984.

---

Pray, Walker, Jackman, Williamson & Marlar by Floyd L. Walker, Tulsa, Vihon, Fuchs, Temple & Berman by Robert F. Fuchs, Chicago, for appellants.

Doerner, Stuart, Saunders, Daniel & Anderson by William C. Anderson and Albert J. Givray, Tulsa, for appellee.

WILSON, Justice.

On review is an order of the District Court of Tulsa County ordering forfeiture under the provision of an *in terrorem* or "no contest" clause of the last will and testament of Sam Zarrow, deceased. The forfeiture of all of the rights of Dorothy Zarrow Renberg, now deceased, the principal beneficiary under her father's will, was based on a finding that representatives of Dorothy's estate, the Renbergs, had violated the no contest clause.

The principle argument addressed on appeal is that the testator's intention and purpose in adding the no contest clause to his will was to protect the interests of his principal beneficiary, Dorothy, from attack by the other members of the Zarrow family who had been devised considerably less than she under his will, and that therefore it was not the testator's intent that forfeiture should operate against her interest.

We have recently discussed the validity of *in terrorem* or no contest clauses and have condoned their use where they do not contravene public policy or a rule of law. *In the Matter of the Estate of Westfahl,* 674 P.2d 21 (Okl.1983). See also, *Whitmore v. Smith,* 94 Okl. 90, 221 P. 775, 777 (1923); and *Bridgeford v. Estate of Chamberlin,* 573 P.2d 694, 696 (Okl.1978); *In re Rettenmeyer's Estate,* 345 P.2d 872 (Okl. 1959); and *Grace v. Hildebrandt,* 110 Okl. 181, 237 P. 98, 100 (1925), where the Court has implicitly recognized the validity of no contest clauses. The no contest clause which is the subject of this appeal is contained in the second codicil to the will and provides:

"It is my strong desire and intent that there be a harmonious and friendly relationship among my children and grandchildren. For this reason, I have tried in my Will, by gifts during my lifetime, and otherwise to treat my children fairly in the ultimate sharing of my assets and estate. Therefore, it is my hope that they will be appreciative of my lifetime efforts and my memory and abide by my Will and overall plan of distribution of my estate, to which I have given much thought and planning. In case any person interested in my estate shall in any manner, directly or indirectly, contest or challenge the validity of my Will, or this Codicil, or any part thereof, and attempt to prevent the proof thereof, or challenge by litigation any provision thereof, or challenge or interfere with the appointment of my nominated Executors and the exercise of their powers and duties under my said Will and this Codicil, then I declare that such contest, challenge, or such interference shall cancel and terminate all provisions for or in favor of the

person making or inciting such contest or challenge, without regard to whether such contest or challenge shall succeed or not, and I hereby declare all and any provisions of my Will in favor of the person so making such contest or challenge, or attempting to, or inciting the same, to be revoked and of no force and effect. Any property forfeited by the operation of this paragraph shall be distributed as part of the residue of my estate. If one or more of the adverse parties referred to above is also one or more of the takers of the residue, his or their forfeited interest therein shall be divided proportionately among the other takers of the residue."

The appellants rely on three tenets of law to support their argument that the testator did not intend the forfeiture provision to operate against interests of the principal beneficiary. The first is the cardinal rule of construction for wills—to ascertain and to give effect to the intent of the testator unless such intent attempts to effect that which the law forbids. *Matter of Estate of Bovaird*, 645 P.2d 500 (Okl.1982); 84 O.S.1981, § 151. The second is that intent of the testator must be ascertained from the entire instrument, construed together with the surrounding facts and circumstances. *Cunningham v. Fidelity Nat'l Bank*, 186 Okl. 429, 98 P.2d 57, 59 (1939). The third is that where an uncertainty exists concerning the application of a particular provision, a testator's intent should be ascertained not only from the words used, but by taking into consideration the circumstances under which such provision was made. 84 O.S.1981, § 152.

The appellants propound that consideration of all of the provisions in the will and in both codicils, along with consideration of the circumstances surrounding the testator's addition to the no contest clause, show his intent that Dorothy was to receive the major portion of his estate and be protected from challenges and contests by virtue of the no contest clause.

The record shows that Sam Zarrow died testate October 6, 1975, and that his will was admitted to probate October 30, 1975. The testator had executed his last will and testament in 1971. Under the will his daughter, Dorothy, was the principal beneficiary.[1] Under the first codicil to his will dated December 28, 1971, the testator named Henry and Dorothy as co-executors, with Jack and the National Bank of Tulsa (now the Bank of Oklahoma) as substitute or successor executor. Under the second codicil of March 16, 1972, which revoked the first codicil, the testator amended his will to designate Dorothy and the bank as co-executors of his estate, with Henry and Jack, in that order, as successor individual executors in the event Dorothy was unwilling or unable to serve. It also added the no contest clause at issue today.

Dorothy served as co-executor for two and one-half years until her death in April, 1978. Her brother, Henry, succeeded her and has acted as individual co-executor with the bank until present. Dorothy was survived by her spouse and children, the appellants, who stand in her place as beneficiaries to her father's estate.

The appellants point in particular to the circumstances surrounding the testator's thwarted attempt to make an *inter vivos* gift to Dorothy of his stock in Bigheart Pipe Line Company. It appears that the testator added the no contest clause after a family dispute had developed over the gift. It is alleged that the two sons, Henry and Jack, who were the only Bigheart shareholders other than the testator, objected on the basis that the attempted gift contravened the Bigheart Stock Purchase agreement, which only allowed transfer of shares by gift or by sale, to other shareholders. Shortly after this attempted gift failed, the testator executed and delivered to Dorothy an assignment of 500 of his shares in Sooner Pipe & Supply Corporation.

It is averred that when Dorothy later requested that this transfer be reflected on

---

1. The testator's wife, Rose, was devised certain property but was not otherwise provided for as

the testator stated that she had an estate of her own which was sufficient to meet her needs.

the Sooner Stock register, Jack brought suit challenging his father's competency when making the gift. That litigation was settled by 350 of the gift shares being transferred to Dorothy on Sooner's books.

Four months after the Bigheart gift was thwarted, the testator executed the second codicil, which removed Henry as co-executor and designated the National Bank of Tulsa as his replacement.

In October 1981, Jack Zarrow, as a residuary beneficiary, filed objections to the petition for distribution, seeking invocation of the forfeiture provision against representatives of Dorothy's estate. The bases for his objections were six proceedings brought by the Renbergs, all of which were primarily based on allegations of breach of fiduciary duties and fraud on behalf of Henry as co-executor and as majority stockholder in Sooner Pipe & Supply Corporation. The District Court subtained the objections and ordered forfeiture under the no contest clause.

■ A no contest clause should first be interpreted to reflect the testator's intent and to prevent forfeiture if possible. *Saier v. Saier*, 366 Mich. 515, 115 N.W.2d 279 (1962). In *Westfahl, supra,* we observed that public policy favors the use of no contest clauses because they protect estates from costly time consuming and vexatious litigation and serve to minimize family bickering concerning the competence and capacity of the testator, as well as the amounts bequeathed. As we noted, however, forfeiture provisions in a will are to be strictly construed against forfeiture, enforced as written, and interpreted reasonably in favor of the beneficiary. Focus of the inquiry turns to whether the offending proceedings fall within the class of contests, challenges, or interference which the testator intended to prevent. In *Westfahl,* inquiry was focused on whether the "contest" which was submission of a subsequent will for probate constituted a contest of the prior will. The principals stated there are useful in resolving the case at bar:

> The word contest as it pertains to a no contest clause is defined as any legal proceeding designed to result in the thwarting of the testator's wishes as expressed in the will. ... The meaning of the word used by the testator and the consideration of the purpose is the determinative factor in ascertaining whether the proceedings constitute a will contest within the purview of the no contest clause. The intention of the testator is controlling; when the court construes a will, it must ascertain and give effect to the testator's intent, unless the intent attempts to effect what the law forbids. Each will must be construed by examining the peculiar surrounding circumstances, the language employed, and the intention of the testator gathered from the general situation. Attendant circumstances may be contemplated to perceive the testator's true intent and the testator's feelings toward the beneficiary named in the will. [*Citations omitted.*]

■ We agree with the appellants that the scenario of events and the changes the testator made in his will lead to the conclusion that he did not intend any forfeiture to act against Dorothy's interest and in favor of his son Henry, whom he had removed as co-executor, and his son Jack, to whom he had devised only his personal jewelry. Circumstances revealed that the testator in making his testamentary devise had taken into consideration gifts he had made to his sons in his lifetime and that he wanted Dorothy to be treated fairly in the ultimate sharing of his assets and estate.[2] Of particular significance is that it was not until

---

**2.** A provision of the will reflects this intent. Article IV, concerning the disposition of the testator's stock in Sooner Pipe & Supply Company, reads in part:

"... I recognize that the division of this stock between my children is not equal; in this connection, I am mindful of the fact that my son, Henry, already owns a substantial amount of Sooner stock and that my wife and I have previously made gifts of this stock to my son, Jack."

after his *inter vivos* gifts to his daughter were thwarted did the testator make provision for forfeiture in his will in the event a beneficiary did not adhere to his wish that the major part of his estate go to Dorothy. The obvious purpose of the testator in adding the no contest clause was to protect the second codicil from any contest that would cut Dorothy and her heirs out of the devises he had made to her within the body of the will and under the second codicil.

The testator's paramount reason for adding the no contest clause was to protect the distribution to Dorothy in order that he would have provided *equally* for his children in his overall lifetime plan. As he had been prevented from completing this plan during his lifetime he could only accomplish it by this testamentary disposition. Not only is it evident that the testator's insertion of the *in terrorem* clause in the second codicil of his will was intended to protect and to insure distribution of his estate to the principal beneficiary, Dorothy, it was also designed to protect her authority as Co-Executor, rather than the authority of successor co-executors. It was clearly Sam Zarrow's purpose to prevent any attempt to defeat the probate of this will and second codicil.

The Renberg heirs brought lawsuits which were not directed toward impeding the testator's design, but went only to administrative concerns which arose in the probate of the estate involving such matters as taxes and valuations of stock which was redeemed and sold. Rather than attempting to disturb the testator's devise to his principal beneficiary, the litigation by Dorothy's heirs appears to have been brought with intentions to preserve the estate. The trial court made no finding that the litigation involved was the kind or class of contests which were intended by the testator to be prohibited. In fact there could be no such finding under this record, as it is evident that the objections and lawsuits were *not* within the class of contests the testator sought to prevent. The trial court interpreted the testator's purpose in inserting the no contest clause was to avoid his estate's being involved in any litigation. This interpretation and the trial court's conclusion that the litigation violated Article X of the codicil is clearly against the weight of the evidence as it would accomplish that which the testator intended to protect against, that is, the defeat of his devise to his daughter.

■ It being proper to ascertain the testator's intention by interpreting the language of the will in light of the circumstances under which the will was made, *Dilks v. Carson*, 197 Okl. 128, 168 P.2d 1020 (1946), we hold that the no contest clause in the will should not be given effect under the circumstances presented, as the operation of the clause here would be against the intentions of the testator. We reverse the trial court's revocation of the provisions in the Last Will and Testament of Sam Zarrow, Deceased, and the Second Codicil thereto in favor of Dorothy Zarrow Renberg, or her personal representatives, and remand for further proceedings consistent with this Court's opinion.

BARNES, C.J., and HODGES, LAVENDER, HARGRAVE, and KAUGER, JJ., concur.

SIMMS, V.C.J., concurs in result.

OPALA, J., concurs in judgment.

DOOLIN, J., dissents.