2007 OK CIV APP 38

**Deborah Alene BARR, Dennis Allen Tucker, Teresa Kaye King, and Wanda Joy Tucker, Plaintiffs/Appellants,**

v.

**Linda Kay DAWSON, Trustee of the Richard Glenn Smith Revocable Living Trust Dated December 8, 1999 and Linda Kay Dawson, an Individual, Defendants/Appellees,**

and

**Glenda Gayle Herrmann, Carol Jean Ritchey, Patricia Ann Kolb, Lue Franklin, Sue Bond, and Connie Smith, Individuals, Defendants.**

**No. 103,371.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Oct. 31, 2006.

Certiorari Denied Feb. 27, 2007.

supra; *In re Initiative Petition No. 344, State Question No. 630,* 1990 OK 75, ¶ 14, 797 P.2d

326.

H. David Hanes, Yukon, OK, for Plaintiffs/Appellants.

Martin Postic, Jr., Postic & Bates, A Professional Corporation, Oklahoma City, OK, for Linda Kay Dawson, Individually and as Trustee, Defendants/Appellees.

DOUG GABBARD II, Presiding Judge.

¶ 1 Plaintiffs appeal the trial court's denial of their motion for partial summary judgment, and the trial court's grant of summary judgment in favor of Defendants. Based on the record and the law, we reverse and remand with directions.

## BACKGROUND

¶ 2 Richard Glenn "Smitty" Smith and Joy Bell Smith were married in the spring of 1974. Smitty had seven children (Defendants) by a previous marriage. Joy Bell had four children (Plaintiffs) by a previous marriage. On December 8, 1999, Smitty executed a will and living trust appointing his daughter, defendant Linda Kay Dawson (Dawson), as trustee and setting aside the sum of $300,000 to care for Joy Bell during her life, and, upon her death, to be distributed to Plaintiffs in equal shares. However, the will and trust both contained the following no contest or "in terrorem" clause:

1. Title 84 O.S.2001 § 44 provides, in part, that no spouse shall bequeath away so much of his or her estate that the other spouse would receive less than an undivided one-half interest in property acquired jointly during coverture. It provides that a spouse may elect to take in lieu of the will and, if he or she is incompetent, a duly appointed guardian or conservator may do so.

I direct that if any legatee or devisee contests the validity of my will and/or this trust agreement, or any of its provisions on any ground, the legacies given to them shall be revoked and declared null and void. Furthermore, such legatee or devisee shall take nothing under my will or this trust. It is my specific intention that any legatee or devisee that violates this condition shall take nothing from my estate, either by specific gift or as a residuary legatee or devisee.

Smitty died on January 20, 2000.

¶ 3 Prior to Smitty's death, Joy Bell had become incompetent and was residing in a nursing home. In February 2000, plaintiff Deborah Barr was appointed her mother's legal guardian. Barr requested Dawson provide her with a copy of Smitty's trust, and Dawson refused. Eventually, on September 27, 2000, Barr filed a petition for letters of administration of Smitty's estate. A few weeks later, Dawson filed a contest of the administration for the reason that her father had a valid will, which she then produced. On November 9, the probate court admitted the will to probate, and appointed Dawson as executrix. The will provided that all of Smitty's property be placed in his living trust. Barr once again requested a copy of the living trust, and Dawson once again refused. On March 20, 2001, in order to protect her mother's rights, Barr filed an election to take against the will.[1]

¶ 4 On June 25, 2001, pursuant to a request for production, Dawson finally provided Barr a copy of the living trust. According to the evidentiary material, this was the first time Barr and her siblings were aware of the terms of the trust. Upon learning that the trust provided sufficient funds to take care of her mother, Barr filed a written withdrawal of the spousal election."[2] Subsequently, Dawson closed out the estate and distributed all its assets into the trust. However, Barr

2. Although Defendants claim that Joy Bell's election invoked the "in terrorem" clause, they do not contest Joy Bell's right to subsequently withdraw the election.

never requested assistance from the trust because Joy Bell's assets were sufficient to provide for her needs during her life.

¶5 On July 13, 2005, Joy Bell died. One month later, Plaintiffs demanded their distribution under the terms of the trust. Dawson refused on the grounds that the filing of the spousal election in the probate case constituted a violation of the "in terrorem" clause. Plaintiffs filed suit. Subsequently, Plaintiffs and Defendants filed separate motions for summary judgment on the issue. The trial court overruled Plaintiffs' motion for partial summary judgment and granted Defendants' motion for summary judgment. Plaintiffs now appeal.

## STANDARD OF REVIEW

■ ¶6 Summary judgment is used to reach a final judgment where there is no dispute as to any material fact, *Indiana Nat'l Bank v. State Dep't of Human Servs.,* 1993 OK 101, ¶10, 857 P.2d 53, 59; and where one party is entitled to judgment as a matter of law. *Sellers v. Okla. Pub. Co.,* 1984 OK 11, ¶23, 687 P.2d 116, 120. We review a grant of summary judgment *de novo. Young v. Macy,* 2001 OK 4, ¶9, 21 P.3d 44, 47. In a *de novo* review, we have plenary, independent, and non-deferential authority to determine whether the trial court erred in its application of the law. *Id.*

## ANALYSIS

¶7 The sole issue presented by this case is whether the filing and subsequent withdrawal of a spousal election on behalf of Plaintiffs' mother by her guardian triggered the no contest or "in terrrorem" clause of the Richard Glenn Smith will and trust.

■ ¶8 The validity of no contest or "in terrorem" clauses attached to wills has long been recognized in this state. *Whitmore v. Smith,* 1923 OK 1102, 94 Okla. 90, 221 P. 775; *Bridgeford v. Estate of Chamberlin,* 1977 OK 206, 573 P.2d 694; *In re Estate of Massey,* 1998 OK CIV APP 116, 964 P.2d 238. Such clauses are generally favored as a matter of public policy because they protect estates from costly, time consuming, and vexatious litigation, and minimize family bickering concerning the competence and capacity of the testator and the amounts bequeathed. *Massey* at ¶3, 964 P.2d at 240; *In re Estate of Zarrow,* 1984 OK 27, ¶12, 688 P.2d 47, 50. For similar reasons, we find no contest clauses attached to trusts equally valid. In either instance, such clauses are strictly construed against forfeiture, and reasonably construed in favor of the beneficiary. *Massey* at ¶3, 964 P.2d at 240; *Zarrow* at ¶12, 688 P.2d at 50.

¶9 In *In re Estate of Westfahl,* 1983 OK 119, ¶5, 674 P.2d 21, 24, the Oklahoma Supreme Court generally defined when a beneficiary's action is sufficient to invoke a no contest provision:

The word, contest, as it pertains to a no contest clause is defined as *any legal proceeding designed to result in the thwarting of the testator's wishes as expressed in the will.* Whether there has been a contest within the meaning of the language used in the clause is decided *according to the circumstances in each case* .... The intention of the testator is controlling; when the court construes a will, it must ascertain and give effect to the testator's intent, unless the intent attempts to effect what the law forbids. Each will must be construed by examining the peculiar surrounding circumstances, the language employed, and the intention of the testator gathered from the general situation. Attendant circumstances may be contemplated to perceive the testator's true intent and the testator's feelings toward the beneficiary named in the will. (Emphasis added; footnotes omitted.)

■ ¶10 Using a similar definition, other courts have held that attacking the mental capacity of the testator or seeking to have the estate declared as community property are clearly contests. However, actions seeking construction of a will, resolving administrative concerns, challenging an executor's suitability for appointment, and filing creditor's claims have been held not to be contests. *See* 80 Am.Jur.2d *Wills* § 1337 (2002). In the present case, Plaintiffs' action was also not a "contest" which invoked the "in terrorem" provision, for the following reasons.

¶ 11 First, the Oklahoma Supreme Court has clearly ruled that a spousal election does not invoke no contest clauses. In the case of *In re Rettenmeyer's Estate,* 1959 OK 199, 345 P.2d 872 (overruled on other grounds, *see In re Bovaird's Estate,* 1982 OK 48, 645 P.2d 500 ), a testator and husband married after entering into an antenuptial contract wherein each released claims to the other's property. When the testator later died and her will was probated, the husband attempted to make a spousal election. The executrix claimed that the spousal election invoked the forfeiture clause of the will. The trial court agreed. The Supreme Court reversed, holding that the husband's right to make such an election had been waived by the antenuptial agreement and since he could not elect his spousal share, the election was insufficient to constitute a "contest." The court further went on to state:

> To hold the election was a violation of the "no contest" clause in the codicil would render nugatory the quoted statutory provisions [for spousal election] and deter parties from seeking their lawful rights.

*Id.* at ¶ 18, 345 P.2d at 877. This holding recognizes the public policy of ensuring a mandatory share to the surviving spouse absent his or her voluntary relinquishment. Accordingly, we hold as a matter of law that a spousal election is not sufficient to invoke a no contest clause.

¶ 12 Second, the Oklahoma Supreme Court recognizes the good faith or probable cause exception to enforcing no contest clauses. In *In re Estate of Westfahl,* 1983 OK 119, 674 P.2d 21, the testator's daughter attempted to invoke a no contest clause in a 1963 will which was admitted to probate after her brother failed in his proffer of a 1976 will executed by their father. The probate court disallowed the latter will due to the brother's undue influence, but refused to allow invocation of the no contest clause. On appeal, the Supreme Court affirmed, finding that the brother believed that the 1976 will was valid and had sponsored it in good faith:

Although there is a split of authority concerning whether a forfeiture clause will be enforced if good cause is shown, the consensus rule is that the forfeiture clause should not be invoked if contestant had probable cause. . . .

*Id.* at ¶ 6, 674 P.2d at 24–25; *see also* 80 Am.Jur.2d *Wills* § 1340 (2002); Annotation, *Validity and Enforceability of Provision of Will or Trust Instrument for Forfeiture of Reduction of Share of Contesting Beneficiary,* 23 A.L.R.4th 369 (1983).

¶ 13 The facts of this case are even more compelling than those in *Westfahl.* Here, plaintiff Barr filed a spousal election to protect her incompetent mother knowing that the will distributed all of Smitty's property to a trust. Indisputably, Plaintiffs were unaware of the terms of the trust because defendant Dawson had consistently refused to divulge those terms. Once Barr obtained a copy of the trust by discovery, she withdrew the election filed on her mother's behalf. We find that the spousal election made in this case was made in good faith and with probable cause, and, therefore, the no contest provision was not invoked.

¶ 14 Finally, we note that Barr's withdrawal of her incompetent mother's spousal election was specifically made due to her understanding that the trust provided sufficient funds to take care of the needs of Joy Bell Smith. Defendants had knowledge that the withdrawal was made immediately after receipt of the trust agreement. A reasonable person would be charged with notice that Plaintiffs were relying on the trust. Nevertheless, defendant Dawson proceeded to foreclose Joy Bell Smith's right to a spousal share by distributing the entire estate into the trust. To allow invocation of the no contest clause under the facts of this case would be unconscionable and would invoke the doctrine of equitable estoppel.[3]

### CONCLUSION

¶ 15 For all the reasons set forth above, we find that the trial court erred in granting summary judgment in favor of Defendants.

---

**3.** Equitable estoppel is defined in *Gypsy Oil Co. v. Marsh,* 1926 OK 246, 248 P. 329, and in a number of subsequent Oklahoma cases. *See, for* *example, Sullivan v. Buckhorn Ranch P'ship,* 2005 OK 41, 119 P.3d 192.

Accordingly, its decision is reversed and remanded with directions to grant partial summary judgment to Plaintiffs, and for further proceedings.

¶16 REVERSED AND REMANDED WITH DIRECTIONS.

RAPP, V.C.J., and REIF, J., concur.