OPINION BY JOHN F. FISCHER, JUDGE:
¶ 1 Dr. E.L. Calhoon established a revocable trust for the disposition of his estate. His son, Dr. Scott W. Calhoon (Son), is a beneficiary and co-trustee of that trust. The senior Calhoon's Wife, Felice Calhoon, is an income beneficiary and trustee for income purposes only. Son filed this action challenging his mother's disposition and management of the trust's assets. Son appeals the district court's October 6, 2014 Journal Entry of Judgment granting his mother's motion for summary judgment finding that this litigation violated the forfeiture clause of his father's trust.[1] The appeal has been assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36, 12 O.S. Supp. 2013, ch. 15, app. 1, and the matter stands submitted without appellate briefing. Son's litigation does not seek to invalidate his father's trust but is an effort to enforce the provisions of the trust as they appear in the trust instrument. As such, this litigation does not violate *666 the forfeiture provision of the trust. The judgment finding to the contrary is vacated and this case is remanded for further proceedings.
BACKGROUND
¶ 2 On December 21, 2001, Dr. E.L. Calhoon executed the second amendment to his 1996 revocable trust. He executed his Last Will and Testament on October 28, 2002. Together, these estate planning documents provided for the distribution of Calhoon's estate on his death. The will devised certain property to Calhoon's Wife, Son, and daughter, Lane F. Dolly. The will also provided for the transfer of the remainder of Calhoon's property to his trust. Son and daughter were named as the beneficiaries of the trust for the distribution of all trust assets on Calhoon's death. However, if Calhoon predeceased his Wife, the trust provided that all assets "shall remain in the trust for [Wife's] lifetime income benefit only." At Wife's death, the assets of the trust would then be distributed to Son and daughter. Calhoon served as initial trustee of the trust. His Wife was named as "Successor Trustee for income purposes only" on Calhoon's death. Son and daughter were named as co-trustees for all other purposes on Calhoon's death and for all purposes if Wife ceased to serve as trustee.
¶ 3 Calhoon died on February 27, 2005. Wife assumed her duties as Successor Trustee. Wife employed James Oakes and Oakes & Associates, P.C., to provide tax and accounting services. The principal trust assets at Calhoon's death included a brokerage account holding securities worth over $1,000,000, oil and gas mineral interests valued at over $300,000, a breeding herd valued at approximately $400,000, and Calhoon's interest in a 9,000-acre ranch. The ranch is owned by a limited liability company of which Calhoon and Son were the members. Son owns forty-eight percent of the company. Calhoon's majority interest became an asset of his trust, and on his death Wife was appointed as manager of the ranch company.
¶ 4 In December of 2008, Wife, Oakes and the trust's attorney met. Wife and Oakes proposed transferring the trust's mineral interests and its interest in the breeding herd to Wife's trust. The attorney advised them that removal of trust assets from the trust corpus would require the consent of the two co-trustees, Son and daughter. Not long thereafter, the attorney's services as legal counsel to the trust were terminated by Wife.
¶ 5 In July of 2009, Son contacted Oakes and requested copies of certain trust records. Oakes responded stating his willingness to cooperate and put the "Trustees and heirs at ease regarding all accounting activities...." However, by letter dated September 28, 2009, Oakes stated that income from trust assets had been comingled with Wife's property and other than providing a list of trust assets on the date of Calhoon's death in 2005, Oakes stated that "no additional information will be forthcoming." On January 21, 2010, Oakes informed Son that Wife now owned the breeding herd "100%." Oakes also informed Son that there was no documentation existing that evidenced the transfer of title to the breeding herd from the trust to Wife. Subsequently, Oakes took the position that Wife had executed a promissory note payable to the trust in exchange for trust assets including the oil and gas mineral interests and the breeding herd. By the time the summary judgment motions were decided, the amount of this note was $2,400,000. The district court found that this "note" was only intended to be an "accounting notation to facilitate cost depletion" and not a transfer of assets from the trust. In a memo dated February 14, 2011, Oakes stated transfers of trust assets were made to Wife because he and Wife "believed there would not be a [Calhoon] trust going forward."
¶ 6 Son filed this action on July 1, 2011. The district court determined that Son's lawsuit violated the forfeiture clause in Calhoon's trust and granted Wife's motion for summary judgment finding Son had forfeited his right as a trust beneficiary and the right to serve as a trustee.[2] Son appeals that judgment *667 and the order overruling his motion for a new trial.
STANDARD OF REVIEW
¶ 7 A trial court's denial of a motion for new trial is reviewed for abuse of discretion. Head v. McCracken , 2004 OK 84, ¶ 2, 102 P.3d 670. "Where, as here, our assessment of the trial court's exercise of discretion in denying defendants a new trial rests on the propriety of the underlying grant of summary judgment, the abuse-of-discretion question is settled by our de novo review of the summary adjudication's correctness." Reeds v. Walker , 2006 OK 43, ¶ 9, 157 P.3d 100.
¶ 8 Title 12 O.S.2011 § 2056 governs the procedure for summary judgment in this case. A motion for summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Id . The de novo standard controls an appellate court's review of a district court order granting summary judgment. Carmichael v. Beller , 1996 OK 48, ¶ 2, 914 P.2d 1051. De novo review involves a plenary, independent, and non-deferential examination of the trial court's rulings of law. In re Estate of Bell-Levine , 2012 OK 112, ¶ 5, 293 P.3d 964.
ANALYSIS
¶ 9 The forfeiture or in terrorem clause in Calhoon's trust provides:
The provisions of this instrument (and of E.L. CALHOON'S Last Will and Testament) are intended to be in lieu of any other rights, claims, or interests of whatsoever nature, whether statutory or otherwise, except bona fide predeath debts, which any beneficiary hereunder may have against or in E.L. CALHOON'S estate or the properties in this trust. Accordingly, if any beneficiary hereunder asserts any claim whatsoever (except a legally enforceable debt), statutory election, or other right or interest against or in E.L. CALHOON'S estate, E.L. CALHOON'S Will, or any properties of this trust, other than pursuant to the express terms hereof or of said Will, or directly or indirectly contests, disputes, or calls into question, before any court, the validity of this trust instrument or of my Will or the validity of any provisions of this trust instrument or of my said Will, then:
(a) Such beneficiary shall thereby absolutely forfeit any and all interests of whatsoever kind and nature which such beneficiary might otherwise have under this trust instrument and the interests of the other trust beneficiaries hereunder shall thereupon be appropriately and proportionately increased and/or advanced.
....
The foregoing provisions shall not be construed, however, to limit the appearance by any beneficiary as a witness in any court proceeding involving this trust instrument or my Will nor shall it limit any beneficiary's appearance in any capacity in any court proceeding brought solely for the construction of either of said documents.
This provision is quoted at the beginning of Son's First Amended Petition, the pleading at issue in this appeal. The district court found that Son's lawsuit contested, disputed and called into question "numerous provisions of [Calhoon's] trust" in violation of the forfeiture clause of that instrument.
¶ 10 "A forfeiture clause is an executory limitation which is employed to effect testamentary intention, and its use is within the province of the testator if it does not contravene public policy or a rule of law." In re Estate of Westfahl , 1983 OK 119, ¶ 4, 674 P.2d 21. Although favored by public policy, forfeiture clauses are "strictly construed against forfeiture, enforced as written, and interpreted reasonably in favor of the beneficiary." Id. Forfeiture is avoided if possible. Id . The intention of the testator of a will or the settlor of a trust is controlling and must be given effect unless that intent "attempts to effect what the law forbids." Id . ¶ 5 (footnote omitted). Intent "must be ascertained from the entire instrument, construed together *668 with the surrounding facts and circumstances." In re Estate of Zarrow , 1984 OK 27, ¶ 4, 688 P.2d 47.
¶ 11 In this case, we are also required to construe the forfeiture provisions of Calhoon's trust and will together. First, "[s]everal testamentary instruments, executed by the same testator, are to be taken and construed together as one instrument." 84 O.S.2011 § 154. Second, the trust forfeiture provision specifically states that a contest of Calhoon's will is a ground for forfeiture of the contesting beneficiary's interest in the trust. The forfeiture clause in Calhoon's will provides:
In the event that any beneficiary under this, my Last Will and Testament, shall, directly or indirectly, contest this Will or dispute any clause or provision thereof, or shall assist or acquiesce in a contest of my estate or shall endeavor to secure or take any part of my estate in any manner other than through or under this Will, then in any or all of the above mentioned cases and events I give and bequeath to such person or persons the sum of One and No/100ths Dollars ($1.00) and no more, in lieu of any other share or interest in my estate....
¶ 12 From these two documents and the surrounding facts and circumstances, we must discern Calhoon's intent regarding the meaning of the terms "contest," "dispute," or "call into question." "Focus of the inquiry turns to whether the offending proceedings fall within the class of contests, challenges, or interference which the testator intended to prevent." Estate of Zarrow , 1984 OK 27, ¶ 12, 688 P.2d 47. The word "contest" has been defined by our Supreme Court as "any legal proceeding designed to result in the thwarting of the testator's wishes...." Estate of Westfahl , 1983 OK 119, ¶ 5, 674 P.2d 21. We conclude, based on the language of these two instruments and applicable law, that Calhoon intended to prohibit legal proceedings that would invalidate his trust or proceedings that would result in a beneficiary receiving a different portion of Calhoon's estate than Calhoon had specified in his estate planning documents. The district court found that Son's lawsuit was the kind of contest Calhoon intended to prevent. We cannot agree.
¶ 13 Son's First Amended Petition alleges that Wife transferred trust assets to her personal ownership, including the trust's interests in the breeding herd and oil and gas minerals together valued at more than $700,000, contrary to the express provisions of the trust. The petition alleges that Wife claims ownership of the trust's interest in the ranch and has deposited to her personal account tax refunds and asset sale proceeds belonging to the trust or the ranch. The petition alleges that the value of the trust's brokerage account had diminished approximately forty percent in three years under Wife's management. The petition also alleges that as the manager of the limited liability company that owns the ranch, Wife has mismanaged ranch operations, engaged in prohibited self-dealing and allowed the ranch to deteriorate. The petition asserts thirteen "causes of action" against Wife and the Oakes defendants. Attached to the petition is Son's affidavit stating that he had reviewed the facts and circumstances of this case with a forensic accounting and litigation expert and concluded that the claims were meritorious and based on good cause. Son's good faith in filing this case is relevant because the Supreme Court has recognized a good faith or probable cause exception to enforcement of a forfeiture clause in certain circumstances. Estate of Westfahl , 1983 OK 119, ¶ 6, 674 P.2d 21 ("[T]he consensus rule is that the forfeiture clause should not be invoked if the contestant has probable cause to challenge the will based on forgery or subsequent revocation by a later will or codicil.").
¶ 14 It is true that Son's amended petition seeks an accounting of trust assets, a declaratory judgment that Wife has no authority to use trust principal for her personal benefit without the consent of the other trustees, and a restoration to the trust of any trust assets improperly transferred. We must determine whether that constitutes a "claim" against Calhoon's estate "other than pursuant to the express terms" permitted by the trust instrument, contesting, disputing or calling into question the validity of Calhoon's trust or will. We conclude that it does not.
¶ 15 First, a substantial portion of the allegations in Son's amended petition concern *669 James Oakes and his accounting firm and allege misconduct, professional wrongdoing and undue influence exercised over Son's 83-year-old mother. These are not claims against Calhoon's estate or the assets of his trust. In addition, Son owns forty-eight percent of the ranch. There is nothing in this record showing that the claims Son makes as a ranch owner against his mother as manager of the ranch or his request for information regarding ranch operations trigger the forfeiture clauses of the trust or the will. Finally, the vast majority of the pleading provisions the district court found to violate the forfeiture clause are references to Son's original petition, not his First Amended Petition. The filing of an "amended petition complete in itself, not referring to the original petition or prior amendments, is an abandonment of all prior averments not contained in the amended petition." Edwards v. Andrews, Davis, Legg, Bixler, Milsten & Murrah, Inc. , 1982 OK 72, ¶ 4, 650 P.2d 857. Son's amended petition makes no reference to, much less any incorporation of, the allegations in his original petition.
¶ 16 Second, much of Wife's challenge to Son's petition focuses on his request for an accounting of the principal assets of the trust. She argues that in requesting the accounting, Son "disputes" the provision of the trust waiving the obligation to "account to any court ... respecting the exercise of any power or discretion granted in this instrument." Son's petition seeks an accounting of "power or discretion" exercised by Wife that is not "granted in this instrument." Further, Wife's argument fails to consider the fact that the accounting obligation is waived only to the extent the requirement "can be legally waived...." Article VII (E) provides: "This instrument and all dispositions hereunder shall be governed by and interpreted in accordance with the laws of the State of Oklahoma." Oklahoma law provides:
A. A violation by a trustee of a duty the trustee owes a beneficiary is a breach of trust.
B. To remedy a breach of trust that has occurred or may occur, the court may:
....
4. Order a trustee to account....
60 O.S.2011 § 175.57. It is inconceivable that Calhoon would have executed a trust instrument that carefully and in detail provided income for Wife while she was living and distributed the principal of his assets to his two children on her death, but then insulated his Wife from any accountability for disregarding the specific provisions of the trust by which he intended to accomplish that result. More importantly, that intent cannot be discerned from the language of the trust instrument or the "surrounding facts and circumstances." Estate of Zarrow , 1984 OK 27, ¶ 4, 688 P.2d 47.
¶ 17 Had Calhoon intended for Wife to have absolute and unchallengeable authority to deal with trust assets, he would not have limited her authority as trustee. But he did. Calhoon appointed his Wife as a trustee, "for income purposes only." She was not granted any "decision or ... control" over the use of trust principal during her lifetime. Calhoon's words in this regard best express his intent. "That is to say, my Wife shall have no authority to use principal of this trust but shall only have the right to receive all of the income from the trust." To the extent Son's amended petition seeks to redress any unauthorized transfer of the trust principal by Wife, that effort does not "call into question" any trust provision but is consistent with, and an effort to, enforce the trust provisions. Further, that effort does not seek to enhance or enlarge Son's share of his father's estate. And Son's effort would also protect his sister's share of her father's estate as is his "legal obligation" as a trustee. "Nothing in this section shall excuse a cotrustee from liability for inactivity in the administration of the trust, nor for failure to attempt to prevent a breach of trust." 60 O.S.2011 § 175.17(D). Cf. , Estate of Zarrow , 1984 OK 27, ¶ 7, 688 P.2d 47 (discharge of legal obligation by one in possession of a will to challenge probate of an earlier will is not prohibited by forfeiture clause).
¶ 18 Third, we are not persuaded by Wife's argument that because she is specifically authorized to sell, exchange or invest trust principal, Son's amended petition "disputes" this authority. Article VIII(B)(1) of Calhoon's trust grants Wife limited authority *670 to sell trust assets but only when the newly acquired assets are exchanged for new trust assets.
However, with her right to receive income shall also go the authority to make investments of trust principal and to exchange trust principal or sell trust principal wherein the proceeds are used to buy other trust principal aquired. From the other trust principal, my Wife shall only have the right to the income from the same.
Son's amended petition does not contest Wife's authority to exchange principal assets of the trust for other assets that become principal of the trust. He alleges that Wife has violated this provision and used principal assets of the trust for her personal benefit. A "beneficiary to a trust has an inherent right to challenge a fiduciary's action." In Re: Wallace Revocable Trust , 2009 OK 34, ¶ 8, 219 P.3d 536. That right is "unquestioned." Id . If Son's allegations are proven true, Wife will be held accountable. "A beneficiary may charge a trustee who commits a breach of trust with the amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred...." 60 O.S.2011 § 175.57(C).[3]
¶ 19 Ultimately, it cannot be concluded as a matter of law that Wife did not violate the trust provisions regarding use of principal. Whether Wife did or did not use trust principal for her own benefit is a disputed issue of fact precluding summary judgment on the basis of this record. Only if this litigation is allowed to proceed can it be determined whether Calhoon's intent for the disposition of his estate has been or will be implemented. On its face, Son's petition does not in its essential import attempt to do anything other than ensure that his father's plan for the distribution of his estate is carried out. The October 6, 2014 Journal Entry of Judgment is vacated.
CONCLUSION
¶ 20 Whether Wife has followed or violated the terms of Calhoon's trust raises issues of fact precluding summary judgment in this case. Son's challenge to his mother's use and management of trust principal assets and the ranch does not violate the forfeiture clauses of his father's trust or will. The October 6, 2014 Journal Entry of Judgment is vacated and this case is remanded for further proceedings.
¶ 21 VACATED AND REMANDED FOR FURTHER PROCEEDINGS .
GOODMAN, C.J., and WISEMAN, P.J., concur.

This judgment did not resolve all claims and counterclaims, and the trial court therefore advanced this decision for appeal pursuant to 12 O.S.2011 § 994.

As a result of this decision, the district court concluded that Son no longer had standing to pursue claims against James Oakes or Oakes & Associates, P.C., and granted their motion for summary judgment, dismissing those claims with prejudice. That ruling is also contained in the district court's October 6, 2014 Journal Entry of Judgment which is the subject of this appeal.

Son's request for damages in his amended petition are not inconsistent with the remedies available to him as co-trustee or trust beneficiary.