**WHOLE COURT**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.** http://www.gaappeals.us/rules

**March 16, 2018**

# In the Court of Appeals of Georgia

A17A2052. JENIFER DUNCAN et al. v. OLGA RAWLS et al.

BRANCH, Judge.

This appeal concerns whether and under what circumstances Georgia public policy prohibits enforcement of an in terrorem, or no contest, provision of a trust. In this case, fourteen beneficiaries of a trust, allegedly in good faith and upon probable cause, challenged the legal validity of the trust based on a claim of undue influence over the settlor by her children, who are also the trustees. We conclude that because the legislature, not this Court, determines Georgia public policy, the trial court did not err by enforcing the in terrorem clause against a claim of undue influence and therefore granting partial summary judgment to the trustees on that claim. For the reasons shown below, however, we vacate that portion of the trial court's decision that addressed the appellants' claims of breach of fiduciary duty and remand the case

for the court to consider whether the appellants' claim of tortious interference with the expectation of a bequest or gift is barred by the in terrorem clause.

"On appeal from a grant of a motion for summary judgment, we review the evidence de novo, viewing it in the light most favorable to the nonmovant, to determine whether a genuine issue of fact remains and whether the moving party is entitled to judgment as a matter of law." *Western Indus. v. Poole*, 280 Ga. App. 378, 379 (634 SE2d 118) (2006) (footnote omitted).

So viewed, the record shows that on or about September 11, 2012, Ms. Olga Casteleiro de Goizueta, heir to her husband's fortune, executed a durable power of attorney ("POA") granting authority to her son Javier Goizueta and daughter Olga Rawls to undertake a variety of actions in her name and on her behalf, including the power to create, revoke, or amend any trust for her benefit, as well as "to do anything that I could do personally or as Trustee."

In February 2013, Ms. Goizueta executed the 31st Amendment and Restatement of her revocable pourover trust and named Javier Goizueta and Olga Rawls as trustees. Schedule B to the trust provided for specific monetary gifts for

fifteen of her staff and employees (fourteen of whom are appellants)[1] upon Ms.

Goizueta's death. The trust provided that Ms. Goizueta reserved the right to change

these gifts by a written instrument signed by Ms. Goizueta and the trustees and that

the trustees had absolute discretion "to determine the validity of any such written

instrument amending Schedule B." The February 2013 trust also contained a "No

Contest Provision," which provided, in relevant part, that under the following

condition:

> [s]hould any beneficiary, singly or in conjunction with any other person
> or persons, directly or indirectly (whether or not in good faith and with
> probable cause), contest or initiate proceedings to contest in any court
> the validity of all or any part of my Will or this Agreement or any other
> trust created by me or, in any manner, attack or seek to impair or
> invalidate any of the provisions of my Will or this Agreement or any
> other trust created by me or to prevent any provision of my Will or this
> Agreement or any other trust created by me from being carried out in
> accordance with its terms . . .

that beneficiary "shall be subject to forfeiture under this Article whether or not such

action is taken in good faith or with probable cause, it being my intention that any

---

[1] The fourteen appellants are Jenifer Duncan, Jennifer Curry, Amanda Smith, Shelia McCloud, Rosalba Arellano Jones, Judy Cunningham, Gloria Espinosa, H. L. Bowen, Clyde Thomas Padgett, W. F. Timms, E. G. Brown, C. W. Payne, Stephen W. Norman, and Joseph Cochran.

such action shall result in forfeiture no matter what the facts and circumstances surrounding such action."

In March 2013, Ms. Goizueta amended Schedule B to reduce the amounts provided to some of the appellant-beneficiaries.

On August 1, 2013, Ms. Goizueta signed the 32nd Amendment and Restatement of her revocable pourover trust. A separate "Family Trust" was executed the same day. Ms. Goizueta again named Olga Rawls and Javier Goizueta as trustees. The August 2013 trust document did not include a Schedule B, but, as in the February 2013 trust, it included an almost identical "No Contest Provision."

Ms. Goizueta died in November 2015, following which the same trustees made distributions to some of the appellants from the Family Trust in amounts less than those listed in Schedule B of the February 2013 pourover trust. Some of the appellants retained counsel, who sent a letter to the trustees requesting that they pay the full amounts listed in Schedule B of the February 2013 trust. The trustees responded with an action in Fulton County Superior Court seeking a declaratory judgment that the August 2013 trust was valid. They also asserted a claim for forfeiture of the distributions made to the appellants from the Family Trust based on

the in terrorem provision contained in the August 2013 trust, and made various claims against an individual that are not relevant to this appeal.

The appellants answered and filed a counterclaim in which they alleged that during the years preceding her death, Ms. Goizueta was isolated and dominated by her children, who schemed to enrich themselves with their mother's money rather than distribute it in accordance with her wishes. The appellants alleged that Ms. Goizueta's children exercised undue influence over their mother, who had diminished capacity at the time, and prepared and caused their mother to execute the August 2013 trust, which eliminated the specific gifts for the appellants found in Schedule B to the February 2013 trust. In the counterclaim, the appellants sought a declaration that the in terrorem provision in the August 2013 trust is unenforceable to the extent it precludes them from asserting (1) a claim of undue influence by the trustees who caused Ms. Goizueta to change her estate documents to revoke her intended gifts to the appellants; (2) a claim of tortious interference with the appellants' expectation of bequests or gifts; and (3) a claim of breach of fiduciary duty by the trustees.

In response, the trustees filed a motion for partial summary judgment on appellants' counterclaim regarding the enforceability of the in terrorem provision, which the trial court granted following a hearing. In its order, the trial court declined

5

appellants' invitation to "judicially adopt the good faith/probable cause exception" to in terrorem clauses, as doing so was "beyond the province of a court." Instead, the trial court elected to defer "any policy decision regarding the adoption of the good faith/probable cause exception to the General Assembly." The trial court further held that the public policy exception allowing an action against trustees based on their alleged misconduct in their role as trustees did not apply because appellants were seeking to challenge, rather than enforce, the provisions of the August 2013 trust. Finally, the trial court rejected appellants' due process challenge to the in terrorem provision because the appellants "never received a legally protectable interest" in the estate.

1. The appellants first argue that Georgia should recognize a probable cause exception to enforcement of in terrorem provisions, and that by holding otherwise, the lower court misinterpreted OCGA § 53-12-22 (b). The appellants further argue that they should be able to bring their claims in good faith without forfeiting what they were given under the trust.

(a) We first agree with the trial court that the in terrorem clause meets the requirement found in OCGA § 53-12-22 (b), the only Georgia statute that addresses in terrorem clauses in trusts.[2] That subsection provides:

> A condition in terrorem shall be void unless there is a direction in the trust instrument as to the disposition of the property if the condition in terrorem is violated, in which event the direction in the trust instrument shall be carried out.

OCGA § 53-12-22 (b).[3] See also Mary F. Radford, Wills, Trusts, Guardianships, and Fiduciary Administration, 65 Mercer L. Rev. 295, 297 (2013) ("Both the Georgia Probate Code and the Georgia Trust Code recognize the validity of [no contest] clauses provided that the will or trust contains a direction as to the disposition of the forfeited property in the event the clause is violated.") (footnote omitted). As the trial court found, the in terrorem clause in Ms. Goizueta's trust contains an alternative disposition to The Goizueta Foundation in the event the clause is triggered.

---

[2] We recognize that OCGA § 53-12-22 (b), as written, does not purport to embody all possible law regarding the enforceability of in terrorem clauses in trusts.

[3] The Probate Code has a similar provision regarding wills. See OCGA § OCGA § 53-4-68 (b).

7

Accordingly, the trial court correctly found that the clause at issue passed the test found in OCGA § 53-12-22 (b).[4]

(b) The appellants argue that even if the clause satisfies OCGA § 53-12-22 (b), this Court should adopt a good faith/probable cause exception to the enforceability of such a clause. Appellants argue that such an exception might provide that in terrorem clauses are enforceable "unless probable cause exist[s] for instituting the proceeding," Restatement (Second) of Property: Donative Transfers § 9.1, and that such a proceeding be brought in good faith. See 1 Ga. Wills & Administration § 8:7 ("Many states refuse to enforce no-contest clauses if there is probable cause for the contest or the contest is brought in good faith.").

Under Georgia law, a trust may be attacked where the trust results from undue influence. See, e.g., *Davison v. Hines*, 291 Ga. 434, 437 (1) (729 SE2d 330) (2012) (some evidence showed that persons with a confidential relationship took such an active role creating a trust that their will was substituted for that of the principal such that the documents were the product of undue influence). But, as shown above, in

[4] The dissent's rhetorical strawman argument notwithstanding, we have not misread OCGA § 53-12-22 (b) at all. In fact, that Code section says nothing whatsoever about the existence of good faith/probable cause exception to enforcement of an in terrorem clause in a trust.

8

terrorem clauses protecting against such a challenge are allowed under Georgia law with only one codified limitation, that being the alternative disposition provision discussed above. The parties have not cited any other statutory limitation on such clauses, and we find none, let alone a good faith/probable cause exception to enforcement of an in terrorem clause.

Although our appellate courts sometimes rely on authorities addressing no contest clauses in wills when analyzing no contest clauses in trusts,[5] there are relevant differences in the codified law. Specifically, OCGA § 53-4-68 (a), pertaining to wills, provides that "[c]onditions in a will[, such as a condition in terrorem,] that are impossible, illegal, or against public policy shall be void." Subsection (a) to the trust statute, which parallels OCGA § 53-4-68 (a), provides only that "[a] trust may be created for any lawful purpose." OCGA § 53-12-22 (a). Thus, cases that quote the statute pertaining to wills to the effect that "conditions which are impossible, illegal, or against public policy shall be void" are distinguishable. See, e.g., *Sinclair v. Sinclair*, 284 Ga. 500, 502 (2) (670 SE2d 59) (2008) (involving an in terrorem clause in a will); *Taylor v. Rapp*, 217 Ga. 654, 656 (124 SE2d 271) (1962) (citing former

---

[5] See, e.g., *Snook v. Sessoms*, 256 Ga. 482, 482 (350 SE2d 237) (1986), citing *Cohen v. Reisman*, 203 Ga. 684, 685 (4) (48 SE2d 113) (1948).

version of OCGA § 53-4-68); *Cohen v. Reisman*, 203 Ga. 684, 684 (2) (48 SE2d 113) (1948) (involving an in terrorem clause in a will).

Next, despite the fact that various forms of good faith/probable cause exceptions have been a part of the law in other states for many years[6] and included in the Uniform Probate Code[7] and the Restatement (Second) of Property,[8] the Georgia Trust Code does not include the good faith/probable cause rule proposed by the

---

[6] 1 Ga. Wills & Administration § 8:7 ("Many states refuse to enforce no-contest clauses if there is probable cause for the contest or the contest is brought in good faith.").

[7] See Uniform Probate Code § 3-905 (1969) ("A provision in a will purporting to penalize any interested person for contesting the will or instituting other proceedings relating to the estate is unenforceable if probable cause exists for instituting proceedings.").

[8] See Restatement (Second) of Property, Don. Trans. § 9.1 (1983)
An otherwise effective provision in a will or other donative transfer, which is designed to prevent the acquisition or retention of an interest in property in the event there is a contest of the validity of the document transferring the interest or an attack on a particular provision of the document, is valid, unless there was probable cause for making the contest or attack.

appellants. Even though the General Assembly revised the Georgia Trust Code in 2010, it did not codify the good faith/probable cause exception at that opportunity. Because the legislature is presumed to act with full knowledge of the existing state of the law,[9] it follows that the legislature chose not to adopt a good faith/probable cause exception to enforcement of no contest clauses in trusts.[10]

Thus, there is no statutory good faith/probable cause exception to enforcement of in terrorem clauses in the Trust Code and no provision for a public policy

---

[9] It is well established that

a statute is presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. It is therefore to be construed in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence, and its meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to other statutes and the decisions of the courts.

*Retention Alternatives, Ltd. v. Hayward*, 285 Ga. 437, 440 (2) (678 SE2d 877) (2009) (citation omitted).

[10] Statutory history, such as shown above, differs from legislative history, which we have not employed as suggested by the dissent. Compare the definition of "legislative history"—"The proceedings leading to the enactment of a statute, including hearings, committee reports, and floor debates," with the definition of "statutory history"—"The enacted lineage of a statute, including prior laws, amendments, codifications, and repeals." Black's Law Dictionary (10th ed. 2014).

11

exception in OCGA § 53-12-22. And the legislature recently amended the Trust Code without including these exceptions. Accordingly, we decline to adopt such exceptions.[11] "[T]he legislature, and not the courts, are empowered by the Constitution to decide public policy, and to implement that policy by enacting laws." *Commonwealth Inv. Co. v. Frye*, 219 Ga. 498, 499 (134 SE2d 39) (1963); see also *Perdue v. Baker*, 277 Ga. 1, 14 (6) (586 SE2d 606) (2003) ("The core legislative function is the establishment of public policy through the enactment of laws.") (footnote omitted). We therefore conclude that the trial court correctly held that no good faith/probable cause exception exists.

2. The trial court erred, however, by declaring as a matter of law that the valid in terrorem clause in the August 2013 trust bars the appellants' claims of breach of fiduciary duty. It also failed to consider whether the clause bars the appellants' claim of tortious interference with an expectation of bequests or gifts.

In their counterclaim, the appellants sought a declaration that the in terrorem provision in the August 2013 trust was unenforceable to the extent it precludes them from asserting their claims, "includ[ing] without limitation" (1) a claim of undue

---

[11] Having failed to address the Georgia law cited above, including the plain difference between statutory law regarding in terrorem clauses in wills and trusts, the dissent turns instead to the law of other states to support its argument.

influence by the trustees who caused Ms. Goizueta to change her estate documents to revoke her intended gifts to the appellants; (2) a claim of breach of fiduciary duty by the trustees; and (3) a claim of tortious interference with the appellants' expectation of bequests or gifts. In response, the trustees moved for partial summary judgment on the legal question of whether the in terrorem clause was enforceable against all of the appellants' claims. In granting partial summary judgment, the trial court first held that there was no good faith/probable cause exception, with which we agree, as shown in Division 1.[12]

(a) The court then held as a matter of law that the in terrorem clause was valid and enforceable against the appellants' claims of breach of fiduciary duty. The appellants had alleged that in addition to being the trustees of the August 2013 trust, the appellees were also the trustees of the February 2013 trust, which provided for the gifts over to the appellants. The appellants alleged that as a result of the powers granted to the trustees under the POA and the February 2013 trust, as well the activities of the trustees, the trustees took on fiduciary duties associated with the February 2013 trust at that time. The appellants alleged that the trustees then breached

---

[12] The trial court noted that "[q]uestions as to whether [the appellants'] actions may have triggered forfeiture of their distributions under the no contest clause are not before the Court."

these duties by unduly influencing Ms. Goizueta to amend Schedule B of that trust and to procure the August 2013 trust to their benefit.

There is an exception to the enforcement of in terrorem clauses when litigation is brought seeking to require a trustee to comply with his fiduciary duties. *Callaway v. Willard*, 321 Ga. App. 349, 358 (3) (a) (739 SE2d 533) (2013). Such a clause cannot be enforced against a litigant when "the purpose of such litigation is to enforce the will and to compel the executor to carry out its terms." *Cohen*, 203 Ga. at 685 (4). Similarly, and in a case following *Reisman* but involving a trust, it was held that "[a] beneficiary [of a trust] assuredly is empowered to enforce the provisions of a trust, no matter the terms of any in terrorem clause." *Snook v. Sessoms*, 256 Ga. 482, 482 (350 SE2d 237) (1986). Thus, in terrorem clauses are enforceable against challenges to a will itself, such as a caveat that seeks to "destroy the Will altogether," but not enforceable against "a petition for accounting and for the removal of an executor . . . because it first affirms the validity of the will." *Norman v. Gober*, 292 Ga. 351, 354 (1) (737 SE2d 309) (2013).

Based on this law, the trial court held that the appellants' claim that the trustees breached their fiduciary duties associated with the February 2013 trust was merely an attempt to "destroy the August 2013 Trust altogether" and that therefore the in

14

terrorem clause could be enforced. We disagree. Setting aside all other issues related to the appellants' claims of breach of fiduciary duty, including the standing of beneficiaries to assert such a claim and whether fiduciary duties attach at the formation of a revocable trust,[13] this claim is an attempt to hold the trustees accountable to the extent that they had fiduciary responsibilities under the February 2013 trust to which they failed to adhere. It is not a claim to set aside the August 2013 trust akin to a challenge to the validity of a will. It is an attempt to enforce the fiduciary duties associated with the earlier trust. Such a claim is subject to the exception to enforcement of in terrorem clauses under *Snook v. Sessoms* and its progeny. Accordingly, we disagree with the trial court that the in terrorem clause is enforceable with regard to such claims. We therefore vacate that portion of the trial court's order. The same result applies to the extent the appellants have asserted a breach of fiduciary duty claim regarding the separate Family Trust.

(b) Unaddressed by the trial court is the appellants' claim of tortious interference with the expectation of a bequest or gift and whether such a claim also falls into the above-exception to enforcement of in terrorem clauses. See generally 1

---

[13] The trial court assumed for purposes of its decision that the trustees were in fact trustees of the February 2013 trust at the time that Ms. Goizueta signed the August 2013 trust.

15

Ga. Wills & Administration § 4:10, and cases cited therein. The court should address this issue upon remand.

*Judgment affirmed in part, vacated in part, and case remanded with direction. Dillard, C. J., Miller, P. J., Doyle, P.J., Andrews, McMillian, and Reese, JJ., concur. Ray, J., concurs fully and specially. Rickman and Mercier, JJ., concur in Div. 2 and in the judgment. Barnes, P. J., Ellington, P. J., McFadden, P. J., and Bethel, J., dissent.*

A17A2052. JENIFER DUNCAN et al. v. OLGA RAWLS et al.

RAY, Judge, concurring fully and specially.

I concur with the majority's decision in this case, not because I personally like the outcome for these parties, but because I agree with the majority's proper exercise of judicial restraint. Under the facts as articulated by the appellants, the imposition of a good faith exception into the in terrorem clause has some appeal. I can't deny that. I do not discount the dissent's contention that such an exception would be a desirable expression of public policy for our state. Where I disagree with the dissent, however, is its contention that it is the role of the courts, and the Court of Appeals of Georgia in particular, to create this exception and to insert it into our law. It is not. In my view, that privilege exclusively belongs with the General Assembly of Georgia.

As Supreme Court Justice Neil Gorsuch recently stated, "it is the job of the judge to apply [the law], not amend the law . . . even when he might well prefer a very different outcome." Indeed, I expect that many a judge has felt pain in applying a law as written by a legislative body to which the judge didn't agree. That sentiment is not new and isolated to the facts here. Indeed, I personally feel discomfort every time I must rule that a sympathetic plaintiff who has been harmed by a government actor

cannot pursue his or her claim due to sovereign immunity. Yet, I understand that it is the role of the General Assembly to determine when and if the State of Georgia can be sued, and that our role in the courts is to apply the rules that the legislature has given to us.

Earlier in my career, I was fortunate to have served 6 years as a member of the Georgia Senate. In that role, it was my privilege to work with 235 other legislators in making sometimes difficult choices regarding the laws of our state. When I moved to the judiciary, however, my focus necessarily changed. As a judge when I encounter a statute to which I do not agree or which I believe is incomplete, I must defer to the decisions that the legislature has made as to what to include and not to include in such law. I might prefer a different outcome, but it is not my role as a judge to decide on the rules, just to apply them. Separation of powers demands nothing less.

A17A2052. DUNCAN et al. v. RAWLS et al.

MCFADDEN, Presiding Judge, dissenting.

I agree with Judge Bethel that the rule the majority adopts is one we should not adopt and are not required by statute to adopt. I write separately to respond to the majority's argument that, because the legislature did not include the good faith/probable cause rule in OCGA § 53-12-22 (b), we should infer that they rejected it.

That is plausible. But it is an inference drawn from silence. I would hold, at least as a general rule and absent statutory history to the contrary, that the one inference properly drawn from the legislature's silence on a question is that the legislature has not answered it.

The majority does not rely on statutory history. The legislature did not remove a good faith/probable cause rule from Georgia's Trust Code or Probate Code. Nor did it modify the in terrorem provisions in any meaningful way. Those Codes were silent as to the good faith/probable cause rule before the revisions referred to by the majority, and they remained silent as to that rule after those revisions. See former OCGA § 53-2-91 (predecessor to OCGA § 53-4-55); former OCGA § 53-2-107 (b) (predecessor to OCGA § 53-12-22 (b), effective until January 1, 1998); former

OCGA § 53-4-68 (b) (predecessor to OCGA § 53-12-22 (b), effective January 1, 1998).

Statutory history has been defined as "[t]he enacted lineage of a statute, including prior laws, amendments, codifications, and repeals." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 440 (2012). Scalia and Garner distinguish statutory history from legislative history, approving the former and opposing the latter. Id. at 256. The majority relies on the latter, drawing inferences about intent from silence.

I agree that we should inquire in appropriate cases about legislative intent. We are commanded to do so by statute. See OCGA § 1-3-1 (a); see also OCGA § 13-2-2 (rules of interpretation of contracts). There is merit to much of the criticism that has been leveled against legislative intent, particularly when the concept is allowed to devolve into attempted collective mind reading or is used as a cover for judicial policy making. See Scalia & Garner, Reading Law at 391-396. But that criticism does not justify a categorical rejection of the concept or disregard of the vast body of case law that has employed it.

Inquiry into legislative intent is at its most legitimate when the text of the statute remains firmly at the center of the analysis. The poet T. S. Eliot wrote,

2

"Between the idea / And the reality / Between the motion / And the act / Falls the Shadow." Eliot, "The Hollow Men." Anyone who puts pen to paper or fingers to keyboard, whether to a craft a work of fiction or to articulate a consensus, must contend with the shadow. The legitimate objective of inquiry into legislative intent is illumination of ideas imperfectly expressed.

Here we do not have ideas imperfectly expressed — only silence.

A17A2052. JENIFER DUNCAN et al. v. OLGA RAWLS et al.

BETHEL, Judge, dissenting.

Because the rule announced by the majority today is not required by statute, deprives the court of one of its basic functions, promotes and facilitates fraud, and produces a genuinely absurd result, I must respectfully dissent.

The majority misreads OCGA § 53-12-22 (b), which provides that an in terrorem provision is "void unless there is a direction in the trust instrument as to the disposition of the property if the condition in terrorem is violated," to mean that an in terrorem clause is *always valid and enforceable*, regardless of surrounding circumstances, if it simply contains a limitation over. The majority misreads the plain wording of the statute and misapprehends its meaning, as the statute in no way precludes a court from determining whether a trust document containing an in terrorem provision was validly created in the first instance. Rather, its patent codified purpose is to ensure that the property of the trust has someplace to go.[1]

----

[1] Indeed, despite its clear purpose of avoiding a lapse in the trust and the majority's recognition that the statute "does not purport to embody all possible law regarding the enforceability of interrorem clauses in trusts," the majority applies the statute as if it does.

Indeed, if the majority's interpretation of OCGA § 53-12-22 (b) were correct and an in terrorem provision in a trust document is always valid and enforceable when it contains a limitation over, then it would not make sense for there to be a carve-out for enforcement of those suits brought against an executor or trustee where the challenger is merely seeking to enforce, rather than challenge, the terms of the trust or will. *See, e.g.*, *Sinclair v. Sinclair*, 284 Ga. 500, 502 (1) (670 SE2d 59) (2008); *Snook v. Sessoms*, 256 Ga. 482, 482 (350 SE2d 237) (1986); *Cohen v. Reisman*, 203 Ga. 684, 685 (4) (48 SE2d 113) (1948). The majority points to no statutory authority providing immunity for such enforcement actions which most certainly are challenges to the administration of a trust.

Further, in requiring that courts blindly and unyieldingly enforce in terrorem provisions containing a limitation over, the majority elevates trust documents above all other written instruments and contracts.[2] Neither binding authority nor a fair reading of the statute countenance such a result.

---

[2] Courts have a fundamental interest and role in determining whether the document is, in fact, what it purports to be, as evidenced by those legal requirements that attend the lawful execution of many legally significant documents. *See, e.g.*, OCGA §§ 24-9-901 (setting forth requirement of authentication or identification as a condition precedent to admissibility of evidence), 44-2-18 (setting forth subscribing witness requirements for a deed), 53-4-20 (setting forth formalities of signing and witnessing will or codicil), 53-4-24 (setting forth affidavit requirements for a self-proved will or codicil).

We are sympathetic to the argument relied upon by the majority that the judiciary should not wade into the waters of establishing public policy. In this instance, however, we believe that the public policy is self-evident, and the General Assembly has not constrained our interpretation by expressing its public policy preference in the statute.[3] "Courts exist to ascertain the truth and to apply the law to it in any given situation[.]" *Winningham v. Winningham*, 966 S.W.2d 48, 52 (II) (Tenn. 1998) (citation omitted). *See also Parker v. Benoist*, 160 So.3d 198, 204 (11) (Miss. 2015) ("The logic for a good-faith exception is simple: courts exist to determine the truth. A forfeiture clause that operates regardless of a party's good faith in bringing suit to ascertain the validity of a will frustrates the fundamental purpose of a court, which is to determine whether a will is valid or not."). The judiciary is a third and independent branch of our government and is constitutionally empowered

---

[3] The majority correctly notes that the General Assembly grants courts the ability to declare conditions in wills void as against public policy. *See* OCGA § 53-4-68 (a). However, elsewhere the majority rejects any notion that courts are empowered to determine public policy, particularly in situations where the legislature has been silent on a subject. The majority's concept of judicial power thus renders surplusage the public policy exception in OCGA § 53-4-68 (a).

3

to fulfill its duties.[4] When the legislative branch has articulated the policy of our state, we are bound to follow it. Where, as here, it has not articulated a policy, we are duty-bound to fulfill the role of the court and discern that test which serves the interests of justice. Thus, while a subordinate branch with respect to the articulation of public policy, the judiciary is not an automaton incapable of action in the absence of direction.

Relatedly, as for the General Assembly's supposed choice during the legislative process not to include a good faith probable cause exception, I must reject this use of legislative history to impute meaning not present in the plain language of the statute. Legislative history is a field of study which has value only to academics, political science students, and (perhaps) novice legislators who are trying to learn the ropes.[5] No meaning should be inferred from *proposals* that are *not* passed, as there could be any number of reasons why this occurred. Thus, contrary to the majority's assertion,

---

[4] *See, e.g.*, Art. 6, Sec. 1, Para. 1; Art. 1, Sec. 2, Para. 3. *See also Thompson v. Talmadge*, 201 Ga. 867, 874 (41 SE2d 883) (1947) ("Legislative power is that which declares what the law shall be; judicial is that which declares what the law is . . .").

[5] "Any attempt to discern legislative intent beyond the express language passed by a legislative body is as practical and productive as attempting to nail Jell-O to the wall." *Bishop v. State*, 341 Ga. App. 590, 593 (802 SE2d 39) (2017) (Bethel, J., concurring).

4

the fact that the General Assembly did not adopt language existing elsewhere in some foreign or uniform code cannot be interpreted to have any meaning separate and apart from the language actually contained in the statute at issue.[6]

In construing a trust, the first aim of a court is to discern and give effect to the intent of the settlor. *See* OCGA § 53-12-20 (b) (1) (intent is a necessary element of establishing an express trust); OCGA § 53-12-101 (b) (property devised by a will to a trust shall be disposed of in accordance with the provisions of the trust instrument or will setting forth the trust terms). *See also McPherson v. McPherson*, 307 Ga. App. 548, 552 (1) (b) (705 SE2d 314) (2011) ("In trust law, the cardinal rule is that the trustor-settlor's intention be followed." (citation omitted)). Indeed the statute the majority purports to construe directs the court to enforce the settlor's intent. Yet the majority would deprive the court of the power to ascertain whether the document actually reflects the intent of the settlor. The majority's opinion does violence to the

---

[6] Despite its attempts to label its analysis as "statutory history," the majority relies exclusively on provisions in uniform codes and foreign jurisdictions without pointing to any element of the actual lineage of the Georgia code, including any discussion of the prior content of the statute, portions of prior law that were carried through, modified, or repealed, or amendments that were considered, adopted, or rejected in 2010. The fact that the General Assembly revised our trust code in 2010 and made changes to provisions not relevant to this question is not germane to an analysis of this statutory provision.

aim of the court in construing trusts and will render the courts of this State impotent in all future cases involving in terrorem clauses.

Under the majority's rule, those who have committed fraud or otherwise acted improperly in securing the execution of a trust document can now insulate themselves from the consequences of their actions so long as their fraudulent or improperly secured trust document contains a limitation over and an in terrorem clause. This is a gross miscarriage of justice and an abdication of the courts' responsibilities.

Courts cannot know whether a trust document, "good on its face, was made in conformity to statutory requirements," whether the settlor was of sound mind, or whether the trust document was the product of undue influence unless these matters are presented in court. *See Winningham*, 966 S.W.2d at 52 (II) (citation omitted). Enforcement of an in terrorem clause that would enable the settlor to "shut the door of truth and prevent the observance of the law[ ] is a mistaken public policy." *Id.* (citation omitted). "A different rule — an unbending one — that in no case shall an unsuccessful contestant of a [trust] escape the penalty of forfeiture of the interest given him, would sometimes not only work manifest injustice, but accomplish results

6

that no rational [settlor] would ever contemplate." *Tate v. Camp*, 147 Tenn. 137, 151-152 (245 SW 839) (1922).

As one of our sister states that has adopted the majority rule that I would follow in this case has observed,

> [I]f the rule invoked by the appellants is to be applied with no case excepted from it, those who unscrupulously play upon the feeling of the [settlor] may, with impunity, enjoy the fruits of their iniquity, and laugh in scorn at those whom they have wronged. If the condition of forfeiture is to be enforced in every case, those who improperly influence a [settlor] may boast to a child against whom he discriminated of the power they exerted over him, and of what they were able to accomplish for themselves, taunting and goading on such child to a contest; and yet if, in the end, those who so invited it, and whose conduct made it justifiable, succeed in sustaining the [trust] by retracting or denying what they said, the contestant will not only be deprived of his [distribution], but those who drew him into a contest may acquire his portion as part of their own plunder . . . . No [settlor], if he could speak from his grave, would declare such to have been his intention when he wrote his [trust] and tried to protect it from assault[.]

*In re Friend's Estate*, 209 Pa. 442, 445 (58 A 853) (1904).

The rule announced by our Court today, taken to its extreme, would require this State's courts to enforce an in terrorem clause despite incontrovertible and undisputed

7

proof that the trust in question was the product of coercion. Even evidence of a proverbial gun to the head of the settlor would not suffice to give courts authority to inquire into whether the document at issue reflected, at a basic level, the intent and free will of its signer. Thus, while the individual holding the proverbial gun could well be subject to criminal prosecution and conviction, he could remain safe with the knowledge that he can still enjoy the fruits of that trust from prison. Or consider the fact that *affirmative evidence* that a settlor was subject to a legal infirmity or had been judicially deemed incompetent prior to the date the trust was executed would be barred by the majority's rule. Such absurd outcomes resulting from the majority's tortured reading of OCGA § 53-12-22 (b) should be eschewed. "The judiciary has a duty to reject a construction of a statute which will result in unreasonable consequences or absurd results not contemplated by the legislature." *Haugen v. Henry Cty.*, 277 Ga. 743, 746 (2) (594 SE2d 334) (2004) ("one of the cardinal rules of statutory construction requires the courts to consider the consequences of any proposed interpretation and not construe the statute to reach an unreasonable result unintended by the legislature. The construction of statutes must square with common sense and sound reasoning." (internal citations and punctuation omitted)).

8

An in terrorem provision should be enforced where it protects the intent of the settlor, but never where it would betray it. The power to influence the conduct of beneficiaries through such a provision belongs to the settlor alone and may not be weaponized by those seeking to supplant the settlor and substitute their own desires. The court cannot give effect to an in terrorem clause, no matter how broadly phrased,[7] where doing so would deprive the court of its basic and inherent function or would risk the court being a party to fraud. The position advanced by Trustees — that is, unyielding enforcement of an in terrorem provision — clearly allows for that possibility and strips the court of its inherent dignity and power to conduct a meaningful review. Such cannot be permitted to stand, and the courts must act so as to prevent this outcome, as the laws of a majority of states explicitly permit.[8]

---

[7] The language of the in terrorem provision in the August 2013 trust document is very broad and applies even to challenges brought "in good faith and with probable cause[.]"

[8] The majority of states appear to recognize a good faith or probable cause exception to the enforcement of in terrorem provisions. *See, e.g.*, Alaska Stat. §§ 13.12.517, 13.16.555; Ariz. Rev. Stat. § 14-2517; Cal. Prob. Code § 21311; Colo. Rev. Stat. §§ 15-11-517, 15-12-905; *South Norwalk Trust Co. v. St. John*, 101 A. 961, 962-964 (Conn. 1917); Haw. Rev. Stat. § 560:2-517; Idaho Code § 15-3-905; *In re Estate of Cocklin*, 17 N.W.2d 129, 132-135 (II) (Iowa 1945); *Hamel v. Hamel*, 296 Kan. 1060, 1075 (2013); 18-A Maine Rev. Stat. Ann. § 3-905; Md. Code, Estates and Trusts, § 4-413; Mich. Comp. Laws Ann. 700.2518, 700.3905, 700.7113; Minn. Stat.

For these reasons, I would vacate the judgment of the trial court and remand the case for a determination of whether the Appellants have violated the in terrorem clause by contending that the August 2013 trust document does not reflect the true intent of the settlor, and if so, whether their challenge was brought in good faith and based upon probable cause. Further, I would vacate the trial court's judgment with respect to the fiduciary duty and tortious interference claims following analysis of the validity of the August 2013 trust document.

I am authorized to state that Presiding Judge Barnes joins in this dissent and that Presiding Judge Ellington joins as to its judgment only.

---

§ 524.2-517; Miss. Code § 91-8-1014; Mont. Code § 72-2-537; Nev. Rev. Stat. 137.005 (4), 163.00195 (4); NJ Stat 3B:3-47; N.M. Stat. § 45-2-517; *Ryan v. Wachovia Bank & Trust Co.*, 235 N.C. 585, 588 (1952); N.D. Cent. Code § 30.1-20-05; *Barr v. Dawson*, 158 P.3d 1073, 1076 (Okla. Civ. App. 2007); 20 Pa. Cons. Stat. § 2521; S.C. Code § 62-3-905; S.D. Codified Laws §§ 29A-2-517, 29A-3-905, 55-1-46; Tenn. Code § 35-15-1014; Tex. Est. Code § 254.005, Tex. Prop. Code § 112.038; Utah Code §§ 75-2-515, 75-3-905; *In re Chappell's Estate*, 221 P. 336 (Wash. 1923); *Dutterer v. Logan*, 137 SE 1 (W. Va. 1927); Wis. Stat. § 854.19. Although this footnote makes clear that many state legislatures have codified good faith and/or probable cause exceptions into statute, we do not believe that courts are dependent upon the legislature in their efforts to protect the dignity and integrity of the judiciary's primary function: the pursuit of truth.